1 | DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
2 | TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
3 |  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
4 | Los Angeles, California 90071-3309
Phone: (213) 622-5555
5 | Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
6 |     tfates@allenmatkins.com
     thsu@allenmatkins.com
7 |
Attorneys for Plaintiff
8 | WILLIAM J. HOFFMAN, Receiver

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **WESTERN DIVISION**

12 | WILLIAM J. HOFFMAN, Court-appointed permanent receiver for
13 | Defendant Nationwide Automated Systems, Inc., Relief Defendants Oasis
14 | Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio
15 | Rentals #3, LLC, and their subsidiaries and affiliates,

Case No. 2:15-cv-5747

**COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND CONSTRUCTIVE TRUST**

16 |
          Plaintiff,
17 |
     v.
18 |
GERALD EHRENS, WILMA EHRENS,
19 | RIVIERA INVESTMENTS, L.P., a Nevada limited partnership, FIRST
20 | ABBY CORPORATION, a Nevada corporation, AMGEST LTD. a Delaware
21 | corporation,

22 |          Defendants.

23 |
24 |
25 |
26 |
27 |
28 |

1  Plaintiff William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-
2 appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"),
3 Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio
4 Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"),
5 hereby brings the following Complaint against the above-captioned Defendants and
6 alleges, on behalf of the Receivership Entities, as follows:

7  ### I.       JURISDICTION AND VENUE

8  1.       This Court has jurisdiction over this matter under 28 U.S.C.
9 sections 1345 and 1367(a), and the doctrines of ancillary and supplemental
10 jurisdiction, in that this action arises from a common nucleus of operative facts as,
11 and is substantially related to the original claims in, the Securities and Exchange
12 Commission ("Commission") enforcement action styled as *Securities and Exchange*
13 *Commission v. National Automated Systems, Inc., et al.*, United States District
14 Court, Central District of California, Case No. 14-CV-07249-SJO (FFMx) ("SEC
15 Action").

16  2.       This Court may exercise personal jurisdiction over the above-captioned
17 Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and 28 U.S.C.
18 sections 754 and 1692.

19  3.       Venue in the Central District of California is proper under 28 U.S.C.
20 section 1391 because this action is an ancillary proceeding to the SEC Action and
21 because the Receiver was appointed in this District pursuant to the Preliminary
22 Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of
23 Documents; (3) Requiring Accountings; and (4) Appointing a Receiver entered by
24 this Court in the SEC Action on October 29, 2014 ("Preliminary Injunction").

25  ### II.       PARTIES

26  4.       The Receiver is the duly appointed permanent receiver for the
27 Receivership Entities, and was appointed permanent receiver for the Receivership
28 Entities pursuant to the Preliminary Injunction.  Among other things, the

Preliminary Injunction calls for the Receiver to recover and marshal, for the benefit of creditors of and investors in the Receivership Entities, any and all assets which were owned, leased, occupied, or otherwise controlled by the Receivership Entities or were otherwise purchased with assets of the Receivership Entities.  The Receiver holds exclusive authority and control over the assets of the Receivership Entities, including over the causes of action alleged herein, over which this Court has ancillary and supplemental jurisdiction.

5.      On information and belief, Gerald Ehrens and Wilma Ehrens are citizens and residents of the County of Clark, Nevada.

6.      On information and belief, Riviera Investments, L.P. is a Nevada limited partnership, First Abby Corporation is a Nevada corporation, and Amgest Ltd. is a Delaware corporation, each with its principal place of business in the County of Clark, Nevada (together with Gerald and Wilma Ehrens, "Defendants").  Defendants are each a recipient of transfers from the Receivership Entities as described further herein.

### III.    FACTUAL ALLEGATIONS

**A.**     **The Purported Business of the Receivership Entities and the Commencement of the SEC Action**

7.      As alleged by the Commission in the SEC Action, NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year.  The Receivership entities also paid referral fees to investors and other agents who recruited new investors to purchase ATMs.

8.      In actuality, the Receivership Entities did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations.  The "rents" paid to investors who purchased fictitious

1 ATMs, as well as referral fees paid to investors and agents, were paid from the
2 amounts raised from other investors.  Thus, NASI operated a classic Ponzi scheme.

3      9.     On or about September 17, 2014, the Commission initiated the SEC
4 Action against the Receivership Entities and their principals Joel Gillis and Edward
5 Wishner, alleging violations of federal securities laws.  The Commission petitioned
6 for the Receiver's appointment, and on September 30, 2014, and October 29, 2014,
7 this Court entered orders appointing the Receiver, first on a temporary basis and
8 then as permanent receiver for the Receivership Entities.

9 **B.**     **The Receiver's Authority and Investigation Pursuant to His**
10      **Appointment**

11      10.     Pursuant to the terms of his appointment, the Receiver is vested with
12 exclusive authority and control over the assets of the Receivership Entities.
13 Specifically, Article XII of the Preliminary Injunction and Article VIII of the Freeze
14 Order vests the Receiver with the "full powers of an equity receiver, including, but
15 not limited to . . . full power to sue . . . and take into possession all [receivership]
16 property."  (Emphasis added.)

17      11.     The Receiver's investigation to date supports and confirms the
18 Commissions allegations in the SEC Action, including that NASI operated a Ponzi
19 scheme, sold fictitious ATMs to investors and made rent and referral fee payments
20 to investors from funds raised from other investors.  Defendants Gillis and Wishner
21 filed answers to the SEC's complaint in which they admit the facts supporting the
22 SEC's Ponzi scheme allegations.

23 **C.**     **Criminal Indictment and Guilty Pleas**

24      12.     On December 16, 2014, Gillis and Wishner were arrested and charged
25 with mail fraud, wire fraud, conspiracy, and aiding and abetting.  *United States v.*
26 *Gillis, et al.*, C.D. Cal. Case No. 14-CR-00712-SJO.  Gillis and Wishner waived
27 indictment, surrendered their passports, and were released on bail.  On January 13,
28 2015, and January 21, 2015, respectively, Wishner and Gillis plead guilty to all four

1  counts of the criminal information.  In connection with Gillis' guilty plea, a
2  statement of facts signed by Gillis that supports the guilty plea was filed by the
3  government ("Statement of Facts").  As part of his guilty plea, Gillis stated under
4  oath that the facts in the Statement of Facts were true.  The Statement of Facts is
5  attached hereto as Exhibit A.

6       13.    The Statement of Facts is fully incorporated herein by reference.  The
7  facts stated therein are included in this complaint as though fully restated and
8  alleged herein.

9       **D.    The Fraudulent Transfers to Defendants From the Receivership**
10            **Entities**

11      14.    Attached hereto as Exhibit B is a schedule of bank transfers from
12  Defendants to NASI and from NASI to Defendants.  As the schedule reflects, the net
13  amount received by Defendants ("Profit Amount") is calculated by subtracting
14  (a) transfers from NASI to Defendants ("Payments from NASI") from (b) transfers
15  from Defendants to NASI ("Deposit Amount").  Defendants' Profit Amount is
16  $1,980,616.50.[1]

17      15.    Defendants had no business dealings with NASI apart from transactions
18  relating to the purchase and leasing of fictitious ATMs and provided no services or
19  other value to NASI other than amounts paid for the fictitious ATMs.

20           **COUNT I – FRAUDULENT TRANSFER**

21      16.    The Receiver incorporates herein each and every allegation contained
22  in Paragraphs 1 through 15, inclusive, hereinabove set forth.

23      17.    Over the course of its pre-receivership operations, NASI paid the Profit
24  Amount to Defendants with the intent to hinder, delay, or defraud NASI's creditors.

25

26

27  [1]  All transfers from Payments from NASI occurring (a) after Defendants received
28       payments equal to the Deposit Amount, and (b) more than seven years prior to
         the date of filing this Complaint have been excluded from the calculation of the
         Profit Amount.

1  Such payments were made from the proceeds of the Ponzi scheme which were
2  generated from investors in the scheme.

3      18.    The Receivership Entities received nothing of value in exchange for the
4  payments that comprise the Profit Amount.

5      19.    At the time the payments comprising the Profit Amount were made to
6  Defendants, NASI was engaged in or about to engage in business transactions for
7  which its remaining assets were unreasonably small in relation to the business or
8  transaction.

9      20.    NASI was insolvent, or became insolvent, shortly after the subject
10  payments comprising the Profit Amount were made to Defendants.

11      21.    NASI intended to incur, or believed or reasonably should have believed
12  it would incur, debts beyond its ability to pay as they became due.

13      22.    As a consequence, the full Profit Amount is an actual and
14  constructively fraudulent transfer under California's Uniform Fraudulent Transfer
15  Act ("CUFTA"), Cal. Civ. Code § 3439, *et seq.*, and is subject to immediate
16  disgorgement to the Receiver.

17                    **COUNT III – UNJUST ENRICHMENT**

18      23.    The Receiver incorporates herein each and every allegation contained
19  in Paragraphs 1 through 22, inclusive, hereinabove set forth.

20      24.    As described above, NASI paid the Profit Amount to Defendants in
21  connection with the Agreement.  Such payments were made from the proceeds of a
22  Ponzi scheme which were generated from investors in the scheme.

23      25.    The Receivership Entities received no value or consideration in
24  exchange for the Profit Amount.

25      26.    Defendants have thus been unjustly enriched in the amount of the Profit
26  Amount, which is subject to immediate disgorgement to the Receiver.

27

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

832640.01/SD                            -5-

## COUNT IV – CONSTRUCTIVE TRUST

27.     The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 26, inclusive, hereinabove set forth.

28.     As described above, Defendants have been unjustly enriched in the amount of the Profit Amount.  The payments comprising the Profit Amount were made from the proceeds of a Ponzi scheme which were generated from investors in the scheme.

29.     Because Defendants have been unjustly enriched in the amount of the Profit Amount, it holds that amount in constructive trust for the benefit of the Receivership Entities.

30.     The Receiver is therefore entitled to a judgment requiring Defendants to immediately turn over the full Profit Amount.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver prays for judgment against the Defendants as follows:

**On Count I:**

(a)     For a judgment against Defendants avoiding the transfers from NASI to Defendants comprising the Profit Amount; and

(b)     For an order directing Defendants to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(c)     For such other and further relief as the Court may deem proper.

**On Count II:**

(a)     For a judgment against Defendants in the amount of the Profit Amount, plus prejudgment interest and costs; and

(b)     For an order directing Defendants to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(c)     For such other and further relief as the Court may deem proper.

**On Count III:**

1  

2    (a)    For a judgment against Defendants in the amount of the Profit Amount,

3 plus prejudgment interest and costs; and

4    (b)    For an order declaring Defendants to be holding the Profit Amount,

5 plus prejudgment interest and costs, in constructive trust for the benefit of the

6 Receivership Entities and directing Defendants to immediately turn over the full

7 Profit Amount to the Receiver; and

8    (c)    For such other and further relief as the Court may deem proper.

10 Dated:  July 29, 2015           ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

12           By:     /s/ Ted Fates

13           TED FATES
Attorneys for Plaintiff
WILLIAM J. HOFFMAN, Receiver

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP