DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        tfates@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Plaintiff
WILLIAM J. HOFFMAN, Receiver

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| WILLIAM J. HOFFMAN, Court-appointed permanent receiver for Defendant Nationwide Automated Systems, Inc., Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GERALD EHRENS, WILMA EHRENS, RIVIERA INVESTMENTS, L.P., a Nevada limited partnership, FIRST ABBY CORPORATION, a Nevada corporation, AMGEST LTD. a Delaware corporation,<br><br>　　　　　Defendants. | Case No. CV15-05747 SJO (FFMx)<br><br>NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AS AGAINST DEFENDANTS RIVIERA INVESTMENTS, L.P., FIRST ABBY CORPORATION, AND AMGEST LTD<br><br>Ctrm: 1 - 2nd Floor<br><br>Date:　April 4, 2016<br>Time:　10:00 a.m.<br>Ctrm:　1 - 2nd Floor<br>Judge:　Hon. S. James Otero |

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on April 4, 2016, at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 1 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff William J. Hoffman of Trigild, Inc., the Court-appointed permanent receiver for Nationwide Automated Systems, Inc., Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates, appointed by this Court in the Securities and Exchange Commission enforcement action styled as *Securities and Exchange Commission v. Nationwide Automated Systems, Inc., et al.*, United States District Court, Central District of California, Case No. 14-CV-07249-SJO (FFMx) ("SEC Action"), will and hereby does present his Motion to the Court for entry of default judgment as against Defendants Riviera Investments, L.P. ("Riviera Investments"), First Abby Corporation ("First Abby"), and Amgest LTD ("Amgest") (collectively, "Defaulted Defendants"). The clerk previously entered the default of Amgest on October 19, 2015. Similarly, the defaults of Riviera Investments and First Abby were entered by the clerk on December 30, 2015.

This Motion is based upon this Notice, the concurrently submitted declarations of William J. Hoffman and Tim C. Hsu, and the supporting exhibits, pleadings, and any oral or documentary evidence that may be presented at the time of this Motion's hearing.

Dated:  February 29, 2016

ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
DAVID R. ZARO
TED FATES
TIM C. HSU

By:_____ /s/ Tim C. Hsu_____
   TIM C. HSU
   Attorneys for Receiver
   WILLIAM J. HOFFMAN

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................. 1

II.  BACKGROUND AND RELEVANT FACTS ........................................ 1

    A.  NASI Operated a Classic Ponzi Scheme ................................. 1

    B.  Defaulted Defendants Received Profits and Commissions
        in Excess of $1.8 Million ...................................................... 2

    C.  The Receiver Obtained Authority to Pursue Clawback
        Claims and Filed This Action Seeking Disgorgement of
        the Profit Amount ................................................................. 3

III.  LEGAL ARGUMENT ..................................................................... 5

    A.  The Receiver is Entitled to Judgment on His Claims .............. 5

    B.  Evidence Submitted Herewith Demonstrate the Procedural
        Requirements for Default Judgment Are Satisfied ................... 7

    C.  Analysis of the Eitel Factors Weighs in Favor of Entry of
        Default Judgment ................................................................. 8

    D.  Judgment Should Be Entered Against Defaulted
        Defendants Jointly and Severally ........................................ 11

IV.  A FORMAL COURT HEARING IS NOT REQUIRED ........................ 12

V.  CONCLUSION ............................................................................ 13

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Davis v. Fendler,*
650 F.2d 1154 (9th Cir. 1981) ..................................................... 12

*Diamond v. Digital Interactive Association, Inc.,*
302 Fed.Appx. 574 (9th Cir. 2008) ....................................... 11, 12

*Donell v. Kowell,*
533 F.3d 762 (9th Cir. 2008) .......................................................5

*Eitel v. McCool,*
782 F.2d 1470 (9th Cir. 1986) ................................................. 9, 10

*Internet Direct Response, Inc. v. Buckley,*
2011 U.S. Dist. LEXIS 28344, (C.D. Cal. 2011) ...........................6

*Lyles v. Sangadeo-Patel,*
225 Cal.App.4th 759 (2014) .........................................................6

*PepsiCo, Inc. v. California Security Cans,*
238 F.Supp.2d 1172 (C.D. Cal. 2002) ................................ 9, 10, 11

*Scholes v. Lehmann,*
56 F.3d 750 [7th Cir. 1995] .........................................................5

*TeleVideo Systems, Inc. v. Heidenthal,*
826 F.2d 915 (9th Cir. 1987) .................................................... 5, 9

*Treglia v. Kernan,*
2013 U.S. Dist. LEXIS 53435 (N.D. Cal. 2013) ...........................9

**Statutes**

50 U.S.C. App. § 521 ......................................................................7

California Civil Code § 3439 ...........................................................5

California Civil Code § 3439.04 ......................................................6

Code of Civil Procedure § 415.50 ...................................................8

**Rules**

Federal Rule of Civil Procedure 55(b)(1) ........................................7

Federal Rule of Civil Procedure 55(b)(2) .............................. 7, 8, 12

U.S.D.C. Local Civil Rule 55-1 .................................................. 7, 8

U.S.D.C. Local Civil Rule 55-1(e) ..................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This action was commenced on July 29, 2015 by Plaintiff William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates (collectively with NASI, "Receivership Entities"), appointed by this Court in the SEC Action.

Despite proper service, Riviera Investments, First Abby, and Amgest failed to file any response or make any appearance in this action. As a consequence, the Receiver previously requested defaults to be entered as against Defaulted Defendants, which defaults were entered by the Clerk of this Court as to Amgest on October 19, 2015 (Dkt. No. 15), and as to Riviera Investments and First Abby on December 30, 2015 (Dkt. No. 33).[1]

Given the entry of Defaulted Defendants' defaults, and their failure to respond or otherwise appear in this action, the Receiver hereby respectfully requests that default judgment be entered as against Defaulted Defendants in the amount as specified herein.

### II.   BACKGROUND AND RELEVANT FACTS

#### A.   NASI Operated a Classic Ponzi Scheme.

This action involves the fraudulent transfers of investor funds to Gerald Ehrens, Wilma Ehrens, and Defaulted Defendants totaling $2,772,616.50, which were raised by NASI from investors in a Ponzi scheme. *See* Declaration of William J. Hoffman ("Hoffman Decl.") ¶¶ 7-11. In particular, NASI raised money from

---

[1] The remaining defendants in this action include Gerald Ehrens and Wilma Ehrens who filed for bankruptcy on September 30, 2015, and thus this matter is stayed as against them pursuant to Bankruptcy Code until such time as the automatic stay is dissolved or relief from such stay is otherwise obtained. (Dkt No. 28.)

1 investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs
2 back from investors, managing the ATMs for the investors, and paying the investors
3 annual "rents" that were guaranteed to total at least 20% of the ATM purchase price.
4 *Id.* at ¶¶ 7-8.  In actuality, however, the Receivership Entities did not sell any
5 ATMs, but instead fabricated and sold fictitious ATMs with fabricated serial
6 numbers and locations.  *Id.*  The "rents" paid to investors, including to Defaulted
7 Defendants, were paid from the amounts raised from other investors.  *Id.*  Thus,
8 NASI operated a classic Ponzi scheme, and the funds paid to investors such as
9 Defaulted Defendants, were paid with proceeds raised from other investors in the
10 Ponzi scheme.  *Id.*  These allegations are further supported and confirmed by the
11 results of the Receiver's investigation, admitted by the principal defendants through
12 their Answers filed in the SEC Action, and admitted by NASI's principal, Joel
13 Gillis, through his Statement of Facts filed in connection with his guilty plea in the
14 related criminal action.  *Id.*

    **B.**    **Defaulted Defendants Received Profits and Commissions in Excess of $1.8 Million.**

17     From 2007 through 2014, and excluding amounts paid directly to Gerald and
18 Wilma Ehrens, Defaulted Defendants together received a total of $2,608,616.50 in
19 investor funds paid by NASI from proceeds generated through the Ponzi scheme
20 ("Payments from NASI").  *Id.* at ¶¶ 9-10.  These payments were paid to Defaulted
21 Defendants as purported returns on investment and commissions for referrals
22 generated by Gerald Ehrens.  *Id.*  Although Riviera Investment is the only party that
23 signed agreements with NASI to purchase the ATMs, payments of commissions for
24 referrals generated by Gerald Ehrens were also made to Amgest and First Abby.  *Id.*
25 at ¶¶ 10-12.

26     Defaulted Defendants, in turn, paid a total of $792,000 to NASI as deposits to
27 purchase fictitious ATMs ("Deposit Amount").  *Id.* at ¶ 10.  Accordingly, the net
28 profit paid to Defaulted Defendant is $1,816,616.50 ("Profit Amount").  *Id.*  A table

1  summarizing the Deposit Amount, Payments from NASI, and the Profit Amount, as

2  more fully detailed in the Receiver's Declaration and Exhibits submitted

3  concurrently herewith, is as follows:

| Deposit/Payment | Payor/Payee | Amount |
|---|---|---|
| Payments From NASI | Riviera Investment | $734,616.50 |
| Payments From NASI | Amgest | $980,500.00 |
| Payments From NASI | First Abby | $893,500.00 |
| | **Total Payments from NASI:** | **$2,608,616.50** |
| Deposit Amount | Riviera Investment | ($792,000.00) |
| | **Total Profit Amount:** | **$1,816,616.50** |

*Id.* at ¶¶ 10-11.

13       As alleged in the Receiver's Complaint, Defaulted Defendants had no

14  business dealings with NASI apart from transactions relating to the purchase and

15  leasing of fictitious ATMs and provided no services or other value to the

16  Receivership Entities other than the Deposit Amount.  *Id.* at ¶ 13.  As such, and as

17  explained herein, the Receiver is entitled to judgment on his claims for

18  disgorgement of the Profit Amount.

19       **C.**       **The Receiver Obtained Authority to Pursue Clawback Claims and**

20             **Filed This Action Seeking Disgorgement of the Profit Amount.**

21       After obtaining authority from this Court in the SEC Action to file actions

22  seeking recovery of funds paid to profiting investors, the Receiver filed the instant

23  action against the Ehrens and Defaulted Defendants on July 29, 2015.  Hoffman

24  Decl. ¶ 3.  The Receiver then attempted to serve the Summons and Complaint on all

25  defendants.  *Id.* at ¶ 4. Although the Receiver successfully served Amgest on

26  September 14, 2015, through personal service upon its President, Bruce Gardiner,

27  the Receiver could not effectuate personal service on the Ehrens, Riviera Investment

1   and First Abby despite multiple attempts to do so.  *Id.*  The Receiver thus sought and

2   obtained authority from this Court to serve the Ehrens, Riviera Investment and First

3   Abby by way of publication.  *Id.*

4          As described in the Receiver's motion to serve by publication, it appeared

5   from multiple stake-outs conducted at the Ehren's residence that the Ehrens were

6   purposefully evading the Receiver's attempts to personally serve the Summons and

7   Complaint.  *See* Declaration of Tim C. Hsu ("Hsu Decl.") ¶¶ 3-4.  In addition, copies

8   of the Summons and Complaint were emailed to Gerald Ehrens directly, and even

9   though read receipts were obtained indicating the email was opened, there was no

10  response received.  *Id.*  On October 27, 2015, this Court granted authorization to

11  serve by publication, and service by publication was completed as to the Ehrens,

12  Riviera Investment and First Abby on November 25, 2015.  *Id.*  Shortly before

13  authorization was granted to serve by publication, the Ehrens filed for individual

14  bankruptcy on September 30, 2015, and thus this action is stayed as against them.

15  *Id.* at ¶ 5.  Notably, the Ehren's schedules filed in support of their bankruptcy

16  confirm that they own the Defaulted Defendants and have known of this action since

17  at least September 30, 2015.  *Id.*

18         Despite personal service of the Summons and Complaint on Amgest, and

19  subsequent service by publication on Riviera Investment and First Abby as

20  authorized by this Court, Defaulted Defendants failed to answer the Receiver's

21  Complaint or otherwise appear in this action.  *See* Hoffman Decl. ¶ 5.  Accordingly,

22  on October 16, 2015, the Receiver requested entry of default as against Amgest,

23  whose default was entered on October 19, 2015.  *Id.*  Similarly, the Receiver

24  requested the entry of default as against Riviera Investment and First Abby on

25  December 23, 2015, and their defaults were entered by the Clerk of this Court on

26  December 30, 2015.  *Id.*

27

28

# III.    LEGAL ARGUMENT

## A.    The Receiver is Entitled to Judgment on His Claims

On an application for entry of default judgment, all well-pleaded allegations in the complaint, except those relating to damages, are deemed to be admitted. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). Here, the Receiver alleges claims for fraudulent transfer under the California Uniform Fraudulent Transfer Act, Cal. Civ. Code section 3439, *et seq.*, unjust enrichment and constructive trust, seeking judgment against Defaulted Defendants for disgorgement of the Profit Amount.

In order to prevail on his claim for fraudulent transfer, the Receiver need only demonstrate that Defaulted Defendants received the profit payments from NASI, and that these payments were made with the actual or constructive intent to defraud. *See Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("Where causes of action are brought under UFTA against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers.") (citing *Scholes v. Lehmann*, 56 F.3d 750, 757-58 [7th Cir. 1995]). The element of intent to defraud is satisfied where the profit payments were made pursuant to a Ponzi scheme. *See, Donell v. Kowell*, 533 F.3d at 770 ("[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.").

Here, as shown by the evidence of payments to Defendants submitted herewith along with the Receiver's declaration, there can be no dispute that Defaulted Defendants received a total of $2,608,616.50 in payments of investor funds from NASI over a number of years, offset by deposits made for their purported investments in the fictitious ATMs in the amount of $792,000.00. Thus, Defaulted Defendants received a total of $1,816,616.50 in net profits.

In addition, the payments made to Defaulted Defendants were made pursuant to the Ponzi scheme perpetrated by the principal defendants in the SEC Action,

1   Mr. Gillis and Mr. Wisher.  In particular, Defaulted Defendants received these
2   payment as purported profits generated on fictitious ATMs purchased by Riviera
3   Investments and as commissions for new investors referred to NASI by Gerald
4   Ehrens.  Moreover, the investor funds used to pay Defaulted Defendants were
5   generated from the proceeds of the Ponzi scheme operated through NASI as
6   admitted by Mr. Gillis and Wishner.  Accordingly, the evidence demonstrates that
7   NASI operated as a Ponzi scheme, and the payments to Defaulted Defendants were
8   paid from proceeds generated through that scheme.  As such, the payments to
9   Defaulted Defendants constitute fraudulent transfers under California Civil Code
10   section 3439.04 and, because no value was provided in exchange for the payments
11   other than the Deposit Amount, the Receiver is therefore entitled to recover the
12   entire Profit Amount Defaulted Defendants received from NASI.

13         In addition, the Receiver is also entitled to judgment against Defaulted
14   Defendants on his claims for unjust enrichment and constructive trust.  In California,
15   "[t]he elements for a claim of unjust enrichment are 'receipt of a benefit and unjust
16   retention of the benefit at the expense of another.'"  *Lyles v. Sangadeo-Patel*, 225
17   Cal.App.4th 759 (2014).  Similarly, constructive trusts are "created by operation of
18   law as a remedy to compel the transfer of property from the person wrongfully
19   holding it to the rightful owner."  *Internet Direct Response, Inc. v. Buckley*, 2011
20   U.S. Dist. LEXIS 28344, *23 (C.D. Cal. 2011) (internal quotations omitted).  Here,
21   Defaulted Defendants received the Profit Amount from NASI and provided no value
22   in return.  The funds used to pay the Profit Amount to Defaulted Defendants were
23   obtained from other investors in the Ponzi scheme.  Thus, Defaulted Defendants
24   have received the benefit of the Profit Amount and is unjustly retaining this benefit
25   at the expense of all other investors in NASI, the vast majority of whom did not
26   receive any profits on their purported investments.  Accordingly, the Receiver is
27   entitled to judgment on his claims for unjust enrichment and constructive trust.

28

1
2

**B.     Evidence Submitted Herewith Demonstrate the Procedural Requirements for Default Judgment Are Satisfied.**

3
4
5
6
7
8
9
10
11
12

Pursuant to F.R.C.P. Rule 55(b)(2), default judgment may be entered against a defendant so long as the plaintiff establishes: (1) the defendant has been served with the summons and complaint, and default was entered for their failure to appear; (2) the defendant is not a minor nor an incompetent person; and (3) if the defendant has appeared, that the defendant was provided with written notice of the application for default judgment at least seven days before the hearing. *See* F.R.C.P. Rule 55(b)(2). Similarly, under Local Rule 55-1, applications for entry of default judgment must be accompanied by a declaration in compliance with the Federal Rules of Civil Procedure Rule 55(b)(1) and/or (2) that include the following information:

13

(a)     When and against what party the default was entered;

14

(b)     The identification of the pleading to which default was entered;

15
16
17

(c)     Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

18
19

(d)     That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and

20
21

(e)     That notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2).

22
23

*See* U.S.D.C., Central District of Cal., Local Civil Rule 55-1, last amended December 1, 2015.

24
25
26
27
28

Here, as reflected in the declarations of the Receiver and his counsel submitted concurrently herewith and in the exhibits attached thereto, Amgest was properly served with the Summons and Complaint on September 14, 2015, by way of personal service upon its President, Bruce Gardiner, but has failed to appear in this action. *See* Hoffman Decl. ¶¶ 4-5; *see also*, Hsu Decl. ¶ 3. Riviera Investment

1  and First Abby were also properly served on November 25, 2015 by way of

2  publication in accordance with Cal. Code of Civil Procedure Section 415.50 and

3  pursuant to this Court's Order authorizing service by publication entered October 27,

4  2015. *Id.* Notwithstanding proper service, and as of the date of this Motion,

5  Defaulted Defendants have failed to file any responsive pleading or otherwise

6  appear in this action. *Id.* Accordingly, on October 16, 2015 and December 23,

7  2015, the Receiver requested defaults be entered as against Amgest, Riviera

8  Investment, and First Abby. *Id.* Pursuant to the Receiver's requests, Amgest's

9  default was entered by the Clerk of this Court on October 19, 2015, and the defaults

10  of Riviera Investment and First Abby were entered by the Clerk on December 30,

11  2015. *Id.*

12      Defaulted Defendants are each legal entities and not natural persons, and as

13  such, are not minors or incompetent persons, or in military service or otherwise

14  exempted from default judgment under the Servicemembers Civil Relief Act.

15  Hoffman Decl. ¶ 6. In addition, notwithstanding the fact that Defaulted Defendants

16  have never made any appearance in this action, and thus are not entitled to notice of

17  this Motion pursuant to Local Rule 55-1(e) or F.R.C.P. Rule 55(b)(2), a copy of this

18  Motion is being sent to Defaulted Defendants concurrently with the filing of this

19  Motion by way of overnight mail. *See* F.R.C.P. Rule 55(b)(2) (requiring service of

20  notice only where "the party against whom a default judgment is sought has

21  appeared personally or by a representative ...."); *see also*, Hsu Decl. ¶ 6.

22      Accordingly, each of the procedural requirements under Local Rule 55-1 for

23  entry of default judgment as against the Defaulted Defendants have been satisfied.

24  **C.    Analysis of the Eitel Factors Weighs in Favor of Entry of Default**

25  **Judgment.**

26      It is well within this Court discretion to enter default judgment against

27  Defaulted Defendants. *See Treglia v. Kernan*, 2013 U.S. Dist. LEXIS 53435 *4

28

1 (N.D. Cal. 2013).   In exercising such discretion to enter default judgment, the court

2 may consider the following seven factors:

> (1) the possibility of prejudice to the plaintiff if default judgment is not entered,
> (2) the merits of plaintiff's substantive claims,
> (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action,
> (5) the possibility of a dispute concerning material facts,
> (6) whether the default was due to excusable neglect, and
> (7) the strong policy favoring decisions on the merits.

8 *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  These factors should

9 be weighed in light of all the circumstances of the action, and the well-pleaded

10 factual allegations of the complaint, except those relating to damages, are deemed to

11 be true.  *See TeleVideo Systems, Inc.*, *supra*, 826 F.2d at 917.

12      Here, the prejudice to the Receiver if default judgment is not entered is great.

13 The Receiver has expended significant time and resources in researching and

14 gathering evidence for profit payments made to Defaulted Defendants, and in

15 litigating this action which was further complicated by the need to serve by

16 publication.  More importantly, even though service has been completed,

17 Defendants have failed to make any appearance in this action, and thus, absent entry

18 of default judgment, the Receiver would be left with no recourse for recovery of the

19 fraudulent transferred funds.  *See PepsiCo, Inc. v. California Security Cans*, 238

20 F.Supp.2d 1172, 1177 (C.D. Cal. 2002) (finding potential prejudice to plaintiff

21 where absent default judgment, there will likely be no alternative recourse for

22 recovery).  Accordingly, the Receiver would suffer great prejudice if default

23 judgment was denied, and thus this factor weighs heavily in favor of the entry of

24 default judgment.

25      The second and third *Eitel* factors focus on the merits of a plaintiff's

26 substantive claim and the sufficiency of the complaint.  Effectively, these two

27 factors require that "a plaintiff 'state a claim on which the plaintiff may recover.'"

28 *PepsiCo*, 238 F.Supp.2d at 1175.  Here, as shown by the evidence submitted,

1  Defaulted Defendants received the Profit Amount totaling $1,816,616.50, which
2  was derived from investor proceeds generated in NASI's Ponzi scheme.  Defaulted
3  Defendants did not provide any value other than their initial deposits paid to NASI
4  to purchase fictitious ATMs.  Thus, the Receiver is entitled to judgment on the
5  substantive merits of his claims against Defaulted Defendants, and these two factors
6  therefore weigh in favor of the entry of default judgment.

7        As for the fourth factor, "the court must consider the amount of money at
8  stake in relation to the seriousness of [the] [d]efendant's conduct." *PepsiCo*, 238
9  F.Supp.2d at 1176.  Here, although the amount sought to be recovered by the
10  Receiver is significant, Defaulted Defendants' conduct is serious in that Defaulted
11  Defendants were used by Gerald and Wilma Ehrens to receive in excess of $2.6
12  million in investor proceeds generated from the Ponzi scheme, of which more than
13  $1.8 million consist of purported profits and commissions paid for referrals of new
14  investors to the scheme.  Thus, this factor also weighs in favor of entry of default
15  judgment.

16        The fifth *Eitel* factor concerns the likelihood of a dispute regarding the
17  material facts surrounding the case.  Here, as set forth herein, there can be no
18  reasonable dispute that Defaulted Defendants received the payments for profit and
19  commissions from NASI and netted a Profit Amount in excess of their deposits
20  totaling $1,816,616.50.  In addition, Defaulted Defendants cannot dispute that NASI
21  operated a Ponzi scheme and that the payments made to Defaulted Defendants were
22  derived from proceeds generated from the scheme, for which no value was provided
23  in return other than the Deposit Amount.  Accordingly, this factor weighs in favor of
24  entering default judgment.

25        The sixth *Eitel* factor considers the possibility of excusable negligence in
26  failing to respond or appear.  As explained above, copies of the Summons and
27  Complaint were personally served on the officer for Amgest, and thus it is clearly
28  aware of the lawsuit.  In addition, although service for Riviera Investment and First

1  Abby were completed by publication, copies of the Summons and Complaint were
2  also emailed to Gerald Ehrens and read receipts indicate the email was opened.
3  Gerald and Wilma Ehrens have also since filed for bankruptcy and, through that
4  filing, indicated that they own Defaulted Defendants and are aware of the instant
5  lawsuit.  However, the bankruptcy is for the Ehrens individually, does not affect the
6  Receiver's claims against Defaulted Defendants, and there is therefore no excuse for
7  Defaulted Defendants' failure to defend or otherwise appear in this action.  As such,
8  this factor also weighs heavily in favor of entering default judgment.

9      Finally, even though seventh factor concerning public policy favors a decision
10 on the merits, "this preference, standing alone, is not dispositive." *PepsiCo*, 238
11 F.Supp.2d at 1177.  Here, each of the other factors weighs in favor of entering
12 default judgment, and thus default judgment should be entered in favor of the
13 Receiver.

14     **D.     Judgment Should Be Entered Against Defaulted Defendants**
15             **Jointly and Severally.**

16     Defaulted Defendants together received the Profit Amount paid to them as
17 purported profits from the fictitious ATMs and commissions generated from
18 referring other investors to NASI.  (*See* Hoffman Decl. ¶¶ 9-12.)  Although Riviera
19 Investment was the only Defaulted Defendant that entered into agreements to
20 purchase ATMs, significant amounts of commissions were generated by Gerald
21 Ehrens referrals and paid to Amgest and First Abby.  *Id.*  Thus, Defaulted
22 Defendants were used by Mr. Ehrens together to not only to receive profits paid by
23 NASI, but also to receive commissions for referrals of other investors to NASI.  As
24 such, Defaulted Defendants in receiving the fraudulent transfers acted as joint
25 tortfeasors, and joint and several liability on default judgment is appropriate.  *See,*
26 *e.g.*, *Diamond v. Digital Interactive Association, Inc.*, 302 Fed.Appx. 574, 576 (9th
27 Cir. 2008) (analyzing joint and several liability for fraudulent transfer under Florida
28 law, and finding that because fraudulent transfer is a tort and defendants acted in

1   concert to perform a fraudulent transfer, that joint and several liability was an
2   appropriate remedy).

3        In the alternative, the Court should enter default judgment against each of the
4   Defaulted Defendants in the amount of profits as calculated by actual payments and
5   deposits.  In particular, and as shown by the cancelled checks submitted along with
6   the Receiver's declaration, Amgest received a total of $980,500.00 from NASI and
7   paid no offsetting deposit for an initial investment.  Hoffman Decl. ¶¶ 9-12.  Thus,
8   default judgment should be entered against Amgest in that amount.  Similarly, First
9   Abby received a total of $893,500.00 with no offsetting deposit, and default
10  judgment should be entered against it in that amount.  *Id.*  Finally, although Riviera
11  Investment received a total of $734,616.50, it paid deposits to NASI totaling
12  $792,000.00, and thus, to the extent this Court is not inclined to enter judgment
13  jointly and severally, the Receiver does not request default judgment as against
14  Riviera Investment.

15  **IV.**    **A FORMAL COURT HEARING IS NOT REQUIRED**

16       A formal court hearing is not required for entry of the requested default
17  judgment and this Court has wide latitude to forego such a hearing where the Court
18  is already familiar with the issues and ample evidence exists in the record to
19  substantiate the calculation of damages.  *See* Fed. Rules Civ. Proc. Rule 55(b)(2);
20  *see also Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (unpub.) (explaining
21  that a default judgment for money may be entered without hearing if the amount
22  claimed is a liquidated sum or capable of mathematical calculation).

23       Here, the Court should forego a formal hearing on this Motion because the
24  amount of damages, *i.e.* the Profit Amount, is capable of calculation as set forth in
25  the evidence of payment submitted with the Receiver's declaration, and because this
26  Court is very familiar with the background facts and legal issues, which are the
27  same as those in numerous other related clawback actions brought by the Receiver
28  and pending before the Court.  Moreover, a hearing would involve considerable

1  administrative expense and therefore reduce the net recovery from the action for the
2  benefit of net losers in the NASI Ponzi scheme.  Accordingly, the Receiver
3  respectfully requests the Court exercise its discretion and enter judgment in favor of
4  the Receiver as against Defaulted Defendants, jointly and severally, in the Profit
5  Amount totaling $1,816,616.50.

6  **V.   CONCLUSION**

7      For the reasons set forth herein, the Receiver respectfully requests that this
8  Motion be granted and default judgment be entered in favor of the Receiver as
9  against Defaulted Defendants, jointly and severally, in the Profit Amount totaling
10 $1,816,616.50.  Alternatively, default judgment should be entered against Amgest in
11 the amount of $980,500.00 and against First Abby in the amount of $893,500.00.

12

13 Dated:  February 29, 2016          ALLEN MATKINS LECK GAMBLE
                                       MALLORY & NATSIS LLP
14                                    DAVID R. ZARO
                                       TED FATES
15                                    TIM C. HSU

16
                                      By:_____/s/ Tim C. Hsu_____
17                                       TIM C. HSU
                                          Attorneys for Receiver
18                                       WILLIAM J. HOFFMAN

19

20

21

22

23

24

25

26

27

28